IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES TALBERT | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 23-679 |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA, PENNSYLVANIA DEPARTMENT OF HEALTH, DEPARTMENT OF HUMAN SERVICES, DEPARTMENT OF CORRECTIONS, PHILADELPHIA COURT OF COMMON PLEAS | : : : : : : | |

## MEMORANDUM

KEARNEY, J.                                                                                                 March 7, 2023

       The Commonwealth's Department of Corrections has detained Charles Talbert in a restrictive housing unit at a correctional facility in the Middle District of Pennsylvania since early 2020 enforcing a sentence entered by a Philadelphia trial judge. Serial litigant Mr. Talbert now sues the Commonwealth and a variety of state agencies, as well as the Philadelphia trial court, alleging they discriminated against him in placing him in a restrictive housing unit (rather than a psychiatric unit) based on his now-admitted numerous mental and emotional disorders. He does not allege a fact suggesting the state trial court discriminated against him in the facility because of his mental or emotional disorders. He instead sues the trial court challenging the sentencing judge's decisions in entering and enforcing a final criminal sentence. His pro se challenge to the merits of his sentencing judge's decisions cannot state a disability discrimination claim against an immune judge and the state trial court requiring we dismiss the disability discrimination claims against the state trial court with prejudice.

We are left with Mr. Talbert's inadequately pled *pro se* disabilities claims against several Pennsylvania state agencies. Mr. Talbert does not plead placement in the restrictive housing unit is a result of his disabilities requiring we dismiss his disabilities claims without prejudice. But he may be able to plead disabilities claims in the District in which he is presently incarcerated and where the state actors are engaging in the challenged decisions. We dismiss the disabilities claims against the Commonwealth and its agencies with leave to timely amend. Mr. Talbert is granted leave to plead facts in an amended Complaint against the Commonwealth and its agencies in the United States District Court for the Middle District of Pennsylvania.

I.   **Alleged *pro se* facts.**

The Philadelphia Department of Prisons transferred pre-sentence detainee Charles Talbert's medical and mental health records to SCI Phoenix on December 12, 2019 so it could treat Mr. Talbert for his admitted diagnoses of antisocial personality disorder, anxiety disorder, bipolar disorder, borderline personality disorder, depression, paranoia, and post-traumatic stress disorder.[1] Less than a week later, on December 18, 2019, the Honorable Genece E. Brinkley of the Philadelphia Court of Common Pleas sentenced Mr. Talbert to a term of three to seven and a half years' incarceration requesting the Commonwealth and Department of Corrections provide him adequate treatment and housing for his mental health conditions.[2] Officers transported Mr. Talbert back to SCI Phoenix on December 23, 2019.[3]

Mr. Talbert had a borderline personality disorder episode at SCI Phoenix on January 5, 2020 while placed in the general population "where his associated behavior became erratic and aggressive."[4] A mental health provider at SCI Phoenix moved Mr. Talbert into a psychiatric observation cell for one day until his behavior stabilized.[5] Mr. Talbert admits SCI Phoenix's

method of addressing his "psychotic-related behavior" is "adequate" but claims "this was the last time in which this method was used."[6]

About a week later, the Department of Corrections transferred Mr. Talbert to SCI Camp Hill in Cumberland County, Pennsylvania.[7] Correctional officers sent Mr. Talbert to the Restrictive Housing Unit on January 13, 2020 for fighting another prisoner.[8] Mr. Talbert remained in the Restrictive Housing Unit for forty-five days and his mental health began to deteriorate because he did not receive adequate mental health treatment.[9] He became "constantly aggravated due to his inability to adjust to such form of extreme isolation."[10]

Mr. Talbert's problems arise when later transferred to correctional facilities outside this District. Mr. Talbert's "psychotically induced behavior" became rampant while at SCI Camp Hill.[11] The Department did not place Mr. Talbert into a psychiatric observation cell at SCI Camp Hill.[12] The Commonwealth and Department instead issued more than one hundred written misconduct reports which caused Mr. Talbert to remain in the Restrictive Housing Unit for three years.[13]

Pennsylvania sentencing Judge Brinkley held a hearing on May 20, 2021, where Mr. Talbert told Judge Brinkley he had not been receiving the treatment and housing for his mental health conditions at SCI Camp Hill.[14] He claims Judge Brinkley refused to intervene in the custody and treatment decisions by the Department at SCI Camp Hill.[15]

The Commonwealth and the Department of Corrections, through its correctional staff, have kept Mr. Talbert in the Restrictive Housing Unit in SCI Camp Hill from 2020 until 2023.[16] The Commonwealth and Department admittedly reviewed Mr. Talbert's placement in the Restrictive Housing Unit, but Mr. Talbert claims these reviews are "meaningless[.]"[17]

3

**II.   Analysis**

Mr. Talbert *pro se* sues the Commonwealth, the Department of Health, the Department of Human Services, the Department of Corrections, and the Court of Common Pleas of Philadelphia County.[18] He invokes our limited subject matter jurisdiction by claiming these entities violated Title II of the Americans with Disabilities Act and section 504 of the Rehabilitation Act by placing him in prolonged isolation at SCI Camp Hill's Restrictive Housing Unit for more than three consecutive years without meaningful review.[19] He claims he suffered mental anguish, aggravation of his pretexting mental disorders, stress headaches, high blood pressure, and lower back issues.[20] Mr. Talbert seeks monetary damages, compensatory damages, costs, and legal fees.[21]

Congress at 28 U.S.C. § 1915A requires us to screen the incarcerated Mr. Talbert's Complaint.[22] Congress requires we must "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."[23] On review, we must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted."[24]

We apply the same standard used under Federal Rule of Civil Procedure 12(b)(6) when considering whether to dismiss a complaint for failure to state a claim under section 1915A(b)(1).[25] A complaint containing "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" meets the Rule 12(b)(6) standard.[26] We accept all factual allegations in Mr. Talbert's Complaint as true and construe those facts in the light most favorable to him to determine whether he states a claim to relief plausible on its face.[27]

We are directed by our Court of Appeals to be "mindful of our obligation to liberally construe a *pro se* litigant's pleadings particularly where the *pro se* litigant is imprisoned."[28] We

4

are to "remain flexible" and "apply the relevant legal principle even when the complaint has failed to name it."[29] But "*pro se* litigants still must allege sufficient facts in their complaints to support a claim" and "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants."[30]

### A. We dismiss Mr. Talbert's claims against the Court of Common Pleas of Philadelphia County with prejudice.

Mr. Talbert sues the Court of Common Pleas of Philadelphia County for violating the Americans with Disabilities Act and the Rehabilitation Act.[31] He claims the state trial court has "jurisdiction over people with serious mental conditions being transferred from the Philadelphia Department of Prisons [ ], to the state and [Department of Corrections'] custody, with inherent power to supervise the enforcement of the treatment and housing conditions imposed within its sentencing commitment orders."[32] He claims Judge Brinkley sentenced him to three to seven and a half years' incarceration conditioned upon the Commonwealth and Department of Corrections providing him adequate treatment and housing for his mental health conditions.[33] But on May 20, 2021, he informed Judge Brinkley he had not been receiving the treatment and housing for his mental health as ordered on December 18, 2019.[34] He claims Judge Brinkley refused to intervene.[35] There is no dispute Judge Brinkley afforded him a hearing.

Our Court of Appeals instructs the Court of Common Pleas is an arm of the Commonwealth of Pennsylvania, and as such, is entitled to Eleventh Amendment sovereign immunity which would bar a suit against it in federal court.[36] But our Supreme Court in *United States v. Georgia* held "Congress unequivocally expressed its intent to abrogate sovereign immunity for claims brought under Title II of the [Disabilities Act]" and "insofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."[37] The Court established a three-part test to determine

whether sovereign immunity has been abrogated in a particular case, as determined on a "claim-by-claim" basis: "(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid."[38]

The first prong of the *Georgia* test requires a party sufficiently plead: "(1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability."[39] The undisputed plead facts confirm the court did not deny Mr. Talbert its "services[.]" Judge Brinkley considered Mr. Talbert's May 20, 2021 motion and did not intervene.[40] Mr. Talbert simply disagrees with Judge Brinkley's decision. His remedy is an appeal in the state courts. He cannot allege the trial court denied him a hearing; he instead alleges he does not like the sentencing judge's decision.

We also recognize "[a] judicial officer in the performance of [her] duties has absolute immunity from suit and will not be liable for his judicial acts."[41] A judge's immunity is overcome only if the judge: (1) did not act in her judicial capacity; or (2) acted "in the complete absence of all jurisdiction."[42] A judge acts in his judicial capacity when he performs "a function normally performed by a judge."[43] Where generally "a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes."[44] A judge will not be deprived of immunity because she acted in error, maliciously, or in excess of his authority; "rather, [s]he will be subject to liability only when he has acted in the clear absence of all jurisdiction."[45] Our Court of Appeals directs judges are protected by absolute judicial immunity when they make judicial determination in state court criminal proceedings.[46]

6

Mr. Talbert appears to be suing the Court of Common Pleas of Philadelphia County for violating the Americans with Disabilities Act and Rehabilitation Act for decisions Judge Brinkley made when sentencing Mr. Talbert and then not ordering the Department to alter its treatment after a hearing in May 2021. But Mr. Talbert fails to meet the first prong of the *Georgia* test. And Judge Brinkley has absolute immunity for sentencing Mr. Talbert. We dismiss the disabilities claims against the Court of Common Pleas with prejudice. He cannot state a disabilities claim against the state trial court after it sentenced him and afforded him a hearing on his alleged request for better treatment in his custody.

### B. We dismiss Mr. Talbert's remaining Americans with Disabilities Act and Rehabilitation Act claims without prejudice.

Mr. Talbert sues the Commonwealth of Pennsylvania, the Pennsylvania Department of Health, the Pennsylvania Department of Human Services, and the Pennsylvania Department of Corrections for violating Title II of the Americans with Disabilities Act and section 504 of the Rehabilitation Act. We analyze Mr. Talbert's Title II and Rehabilitation Act claims together because "the substantive standards for determining liability are the same." [47]

"Title II of the [Americans with Disabilities Act] prohibits discrimination against the disabled in public services, programs, and activities."[48] To state a claim under Title II of the Act, Mr. Talbert must plead facts allowing us to plausibly infer: "(1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability."[49] Pennsylvania's correctional facilities are "public entities" as defined by Title II of the Act.[50]

Where, as here, Mr. Talbert seeks compensatory damages, Mr. Talbert must also allege "intentional discrimination under a deliberate indifference standard."[51] To show deliberate

indifference, Mr. Talbert must allege the entities he sued: (1) had "knowledge that a federally protected right is substantially likely to be violated," and (2) failed "to act despite that knowledge."[52]

Mr. Talbert alleges the Commonwealth, the Department of Corrections, "by and through its correctional staff," the Pennsylvania Department of Health, and the Pennsylvania Department of Human Services discriminated against him when they placed him in the Restrictive Housing Unit at SCI Camp Hill after a fight upon arrival at the facility.[53] He claims these entities were deliberately indifferent to his serious mental conditions because they knew Mr. Talbert suffered from antisocial personality disorder, anxiety disorder, bipolar disorder, borderline personality disorder, depression, paranoia, and post-traumatic stress disorder, but failed to house him in an appropriate setting to treat his needs.[54] His deliberate indifference claims sound in an Eighth Amendment challenge to his conditions of custody. Mr. Talbert does not plead a disabilities discrimination claim.

Mr. Talbert sufficiently plead two of the four elements of a disabilities discrimination claim. He admits to being an individual with a disability.[55] Having met the first two elements for a disabilities discrimination claim, we focus on the third and fourth elements – whether these Pennsylvania entities excluded Mr. Talbert "from participation in or denied the benefits of the services, programs, or activities of a public entity" because of his disability.[56] Mr. Talbert pleads "[he] was sent to the [Restrictive Housing Unit] for fighting another prisoner."[57] He then alleges the Department of Corrections knew of, yet failed to accommodate his deteriorating mental health while in the Restrictive Housing Unit.[58] He presumably challenges the Department's decision to not place him in the general population even though he admits his emotional and mental disorders.

8

But Mr. Talbert does not contend the Department, or any of the entities he sues, placed him in the Restrictive Housing Unit *because of* his alleged mental disabilities or denied him a particular program or service *because of* his alleged mental disabilities.[59] And we are mindful "[i]mproper medical treatment claims may not be brought under the [Americans with Disabilities Act] or [Rehabilitation Act]."[60]

We dismiss Mr. Talbert's claims against the Commonwealth, the Pennsylvania Department of Corrections, the Pennsylvania Department of Health, and the Pennsylvania Department of Human Services for violating the Americans with Disabilities Act and Rehabilitation Act without prejudice to possibly plead facts supporting his disabilities or possible Eighth Amendment claims.

### C. We transfer Mr. Talbert's remaining claims to the United States District Court for the Middle District of Pennsylvania.

Mr. Talbert is presently incarcerated at SCI Coal Township located in the Middle District of Pennsylvania.[61] Mr. Talbert's claims against the Commonwealth, the Pennsylvania Department of Health, the Pennsylvania Department of Human Services, and Pennsylvania Department of Corrections arise from conduct which occurred at SCI Camp Hill located in the Middle District of Pennsylvania. Mr. Talbert's claims do not arise from conduct in Philadelphia facilities or at SCI Phoenix; to the contrary, he swears SCI Phoenix offers a fair comparator: Mr. Talbert swears he had a borderline personality disorder episode at SCI Phoenix on January 5, 2020, and a mental health provider placed Mr. Talbert into a psychiatric observation cell for one day until his behavior stabilized, which Mr. Talbert described as an "adequate" treatment but claims "this was the last time in which this method was used."[62] A few days later, correctional officers transferred Mr. Talbert to SCI Camp Hill where officers placed him in the Restrictive Housing Unit.[63]

Mr. Talbert offers no present connection to this venue. A possible disabilities or Eighth Amendment claim (if suitably amended) brought by an incarcerated person at SCI Coal Township

9

against state actors at SCI Camp Hill in the Middle District of Pennsylvania is proper in the Middle District of Pennsylvania. We transfer the case to the United States District Court for the Middle District of Pennsylvania.

Venue is proper in the judicial district where "any defendant resides, if all defendants are residents of the State in which the district is located;" or where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]"[64] "[I]f there is no district in which an action may otherwise be brought . . . any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."[65] Congress in 28 U.S.C. § 1404 requires we consider the "convenience of parties and witnesses" and "the interests of justice" before transferring a civil action to another district "where it might have been brought."[66] Congress through section 1404(a) gives us "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer."[67] We find the factors described by our Court of Appeals in *Jumara v. State Farm Insurance Company* favor transfer to the United States District Court for the Middle District of Pennsylvania.[68]

There is no nexus between Mr. Talbert's conditions of confinement claim to this District. We transfer this matter to the United States District Court for the Middle District of Pennsylvania – after dismissing the Court of Common Pleas of Philadelphia County with prejudice – for claims arising entirely at SCI Camp Hill located in the Middle District of Pennsylvania brought by an incarcerated individual residing in the Middle District of Pennsylvania.

## III. Conclusion

We dismiss Mr. Talbert's claims against the Court of Common Pleas of Philadelphia County with prejudice as an amendment to sue the court is futile. We dismiss Mr. Talbert's claims

10

against the Commonwealth, the Pennsylvania Department of Health, the Pennsylvania Department of Human Services, and Pennsylvania Department of Corrections without prejudice as Mr. Talbert fails to allege these entities violated the Americans with Disabilities Act or the Rehabilitation Act. But we grant him leave to file an amended Complaint if he can cure the defects. We transfer this matter to United States District Court for the Middle District of Pennsylvania.

---

[1] ECF Doc. No. 1 ¶ 24.

[2] *Id.* ¶ 25.

[3] *Id.* ¶ 26.

[4] *Id.* ¶ 28.

[5] *Id.* ¶ 29.

[6] *Id.* ¶ 30.

[7] *Id.* ¶ 31.

[8] *Id.*

[9] *Id.* ¶ 32.

[10] *Id.*

[11] *Id.* ¶ 33.

[12] *Id.* ¶ 30.

[13] *Id.* ¶ 33.

[14] *Id.* ¶ 34.

[15] *Id.* ¶ 36. We are not aware if Mr. Talbert appealed Judge Brinkley's decision on the Department's placement decisions.

[16] *Id.* ¶ 42.

[17] *Id.* ¶ 44.

[18] *Id.* ¶¶ 2–6.

---

[19] *Id.* ¶¶ 46–67.

[20] *Id.* ¶ 45.

[21] *Id.* ¶¶ 55, 67.

[22] *Shane v. Fauver*, 213 F.3d 113, 116 n. 2 (3d Cir. 2000).

[23] 28 U.S.C. § 1915A(a).

[24] 28 U.S.C. § 1915A(b)(1).

[25] *Turner v. District Att'y Phila. Cnty.*, No. 22-491, 2022 WL 1568395, at *3 (E.D. Pa. May 18, 2022) (citing *Neal v. Pa. Bd. of Prob. & Parole*, No. 96-7923, 1997 WL 338838, at *1 (E.D. Pa. June 19, 1997); *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)).

[26] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[27] *Elansari v. Univ. of Pennsylvania*, 779 F. App'x 1006, 1008 (3d Cir. 2019) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)) (quoting *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012)).

[28] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) and citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)) (internal quotations omitted).

[29] *Yogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala*, 704 F.3d at 244).

[30] *Id.* (quoting *Mala*, 704 F.3d at 245) (italics added).

[31] ECF Doc. No. 1 ¶¶ 46–67.

[32] *Id.* ¶ 20.

[33] *Id.* ¶ 25.

[34] *Id.* ¶ 34.

[35] *Id.* ¶ 36

[36] *See Dutton v. Ct. of Common Pleas of Philadelphia Domestic Rels. Div.*, 215 F. App'x 161, 162 (3d Cir. 2007) ("[W]e have held that the First Judicial District of Pennsylvania, which includes the Court of Common Pleas of Philadelphia, was entitled to Eleventh Amendment immunity as a state entity with respect to a federal claim under [Title I of the] Americans with Disabilities Act."); *Benn v. First Judicial Dist. of Pennsylvania*, 426 F.3d 233, 240 n.1 (3d Cir. 2005); *Malarik v. Court of Common Pleas of Beaver Cty, Pennsylvania*, 145 F.App'x. 756, 757 (3d Cir. 2005); *see also Taylor v. Pennsylvania*, No. 17-3369, 2018 WL 11243146, at *1 n. 1 (E.D. Pa. Dec. 12, 2018).

---

[37] *Geness v. Administrative Office of Pennsylvania Courts*, 974 F.3d 263, 270 (3d Cir. 2020) (citing *United States v. Georgia*, 546 U.S. 151, 154 (2006)); *Georgia*, 546 U.S. at 159. In *Georgia*, a paraplegic inmate in the state prison system filed a complaint in federal court challenging the conditions of his confinement under Title II. *Georgia*, 546 U.S. at 151.

[38] *Geness*, 974 F.3d at 270.

[39] *Id.* at 271.

[40] ECF Doc. No. 1 ¶ 34.

[41] *Capogrosso v. The Supreme Court of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009) (quoting *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006)).

[42] *Figueroa v. Blackburn*, 208 F.3d 435, 440 (3d Cir. 2000) (citing *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991)); *see also Clark v. All the Judges of the Crim. Just. Ctr.*, No. 21-5690, 2022 WL 1567321, at *2 (E.D. Pa. May 18, 2022).

[43] *Clark*, 2022 WL 1567321, at *2 (quoting *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000)).

[44] *Clark v. Warden & All Prison Guards*, No. 21-5498, 2022 WL 1443427, at *4 (E.D. Pa. May 5, 2022) (quoting *Figueroa*, 208 F.3d at 443–44).

[45] *Kinnard v. George*, 652 F. App'x 96, 98 (3d Cir. 2016) (internal quotations omitted).

[46] *Id.* (holding lower court properly dismissed § 1983 action by a *pro se* plaintiff against two state court judges where plaintiff complained of "judicial actions [the] Judges . . . took in the course of an official criminal proceeding" because the judges were "protected by absolute judicial immunity").

[47] *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 288 (3d Cir. 2019) (citing *McDonald v. Com. of Pa., Dep't of Pub. Welfare Polk Ctr.*, 62 F.3d 92, 95 (3d Cir. 1995)).

The Rehabilitation Act prohibits qualified individuals with a disability being "excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." "solely by reason of his or her disability." 29 U.S.C. § 794.

[48] *Disability Rights New Jersey, Inc. v. Comm', N.J. Dep't of Hum. Servs.*, 796 F.3d 293, 301 (3d Cir. 2015) (citing *Tennessee v. Lane*, 541 U.S. 509, 517 (2004)).

[49] *Geness v. Cox*, 902 F.3d 344, 361 (3d Cir. 2018) (quoting *Haberle v. Troxell*, 885 F.3d 170, 178–79 (3d Cir. 2018)).

[50] *Brown v. Pennsylvania Dep't of Corrections*, 290 F. App'x 463, 467 (3d Cir.2008).

---

[51] *Furgess,* 933 F.3d at 289 (citing *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013)); *Geness*, 974 F.3d at 263, 274 n.11.

[52] *Geness*, 974 F.3d at 274 n.11 (quoting *Durrell*, 729 F.3d at 265).

[53] ECF Doc. No. 1 ¶¶ 33, 35, 42.

[54] *Id.* ¶¶ 24, 38–39.

[55] *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–11 (1998) (holding a state prisoner is a "qualified individual" under the Americans with Disabilities Act); 42 U.S.C. § 12102(1)(A) (defining "disability" to include "a . . . mental impairment that substantially limits one or more major life activities").

[56] *Geness*, 902 F.3d at 361 (3d Cir. 2018) (quoting *Haberle*, 885 F.3d at 178–79).

[57] ECF Doc. No. 1 ¶ 31.

[58] *Id.* ¶ 32.

[59] *See Goins v. Beard,* No. 09-1223, 2011 WL 4345874, at *12 (W.D. Pa. Sept. 15, 2011).

[60] *A.H. v. St. Louis Cty.*, 891 F.3d 721, 729–30 (8th Cir. 2018).

[61] ECF Doc. No. 1.

[62] *Id.* ¶¶ 29–30.

[63] *Id.* ¶ 31.

[64] 28 U.S.C. § 1391(b).

[65] *Id.*

[66] 28 U.S.C. § 1404(a).

[67] *Jumara v. State Farm Insurance Company*, 55 F.3d 873, 883 (3d Cir. 1995) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30–31 (1988)).

[68] Our Court of Appeals in *Jumara* requires we consider private factors such as: (1) Mr. Talbert's choice of venue; (2) defendants' preference; (3) where the claim arose; (4) the relative physical and financial conditions of the parties; (5) convenience of the witnesses – but only to the extent the witnesses may actually be unavailable for trial; and (6) location of books and records (similarly limited to the extent the files could not be produced in the alternative forum). *Id.* at 879–80. The public factors we consider include: (1) enforceability of the judgment; (2) practical considerations to make trial easy, expeditious, or inexpensive; (3) court congestion; (4) local interest in deciding controversies at home; (5) public policies of the fora; and (6) familiarity of the trial judge with the applicable state law in diversity cases. *Id.* Although Mr. Talbert's forum preference is the United

States District Court for the Eastern District of Pennsylvania, he does not reside here (allowing us to offer less consideration) and all the other factors strongly favor transfer or are neutral. The claims arise in the Middle District of Pennsylvania brought by an incarcerated person in the Middle District of Pennsylvania against state actors in the Middle District of Pennsylvania. The witnesses to his claims are in the Middle District of Pennsylvania.Transporting Mr. Talbert to the Middle District courthouse is less expensive. This controversy arises in the Middle District of Pennsylvania.